The next matter, number 231522, Margaret Jespersen et al. versus Colony Insurance Company et al. At this time, if counsel for the appellant would please introduce himself on the record to begin. Good morning. May it please the Court, my name is Bruce Felmley, and together with Ben Folsom and Graham Stebden from my office, we represent the Jespersens in this matter. I would like to ask for one minute of rebuttal. You may have it. Concluded with Mr. Besch's remarks. In addition to responding to any questions that the Court may have on any of the issues in this case, I plan to focus my argument on two critical errors we believe the District Court made in granting Colony Insurance's motion for summary judgment and denying the Jespersens' motion for summary judgment for the plaintiff. First, as to that first issue that ruled for common insurance, the Court refused to apply the compulsory insurance doctrine to a portion of a City of Manchester's ordinance that mandates the purchase of liability insurance within certain limits to cover claims for bodily injury and death and property damage. And that's required because Panucci's Bar and Grill had to get a license to have sidewalk seating out on the sidewalk during a certain portion of the year. The second issue that I'll address, and it's closely related to the rationale that the Court implied in denying the compulsory insurance, is the failure to apply the unique New Hampshire statutory burden of proof that applies as to coverage questions in declaratory judgment actions. In New Hampshire, the rule is that the burden of proof with respect to coverage is always on the carrier, whether that is a contention between the insurer or a claimant under that policy. And the Court here specifically refused to apply it, indicating it didn't think there was a disputed issue of fact, and I'm going to address it. That's what I was going to ask you. Isn't this the way it's decided? If it's a legal issue, the burden doesn't really matter. It's just determining what the legal issue is. If on the legal issue you lose, then there's no need to go into the burden. Except that the Court then applied the burden of proof, in effect, by denying the evidence that we put in, which was critical to the case. The clearest example of the refusal to apply the burden of proof on colony was to deny and dismiss the affidavit of the city clerk of Manchester, who administers the compulsory insurance and the licensing policy, who presided a sworn declaration indicating that the purpose included protecting the public, not just the city, and went through and described the system by which this was applied to city events, parades, other things, including sidewalk seating, and how this was an important comprehensive part of the city's effort to protect the public. The Court said, I don't think he can say that. I don't think that it's in the language of the policy. I don't think the ordinance is specific on that. I'm not going to accept his affidavit. How is a city clerk's view about the ordinance dispositive of how to treat the ordinance? How is it dispositive? Well, the Court viewed him as a functionary sort of just making notations or something. This is the official in the city, and the amicus brief from the city of Manchester, which is supporting this position, makes it clear he is involved in assessing the application, determining the nature of the activity, coordinating with the risk manager for the city that decides whether or not these public events and public uses of public property. Is he empowered to determine that you haven't complied with the ordinance if you enforce your notice provision? I'm not sure I understood your question. Is he empowered to conclude that a licensee has not complied with the ordinance if the licensee determines that the notice provision of the insurance contract remains valid? I don't know that the city clerk gets into the weeds of assessing. Isn't that the question that we're trying to figure out is whether the ordinance makes that noncompliant? No, I think that the issue we're trying to determine is that when the city compels this policy, the court- Does it permit the insurance contract's notice provision to be enforced? And that is- And that's not something the city clerk passes on. The city clerk doesn't decide the compulsory insurance doctrine. Yes, so that's all I'm saying. So that's what we're trying to figure out is that was the intention for the compulsory insurance doctrine to be triggered by this ordinance. Right, but the city clerk doesn't decide the matter of law that existed in many, many cases in the financial responsibility area in New Hampshire law that this happens as a matter of public policy. I'm just saying that for purposes of your argument, if we set aside the city clerk dispute for a moment, we still have the question, does the ordinance require the non-enforcement of the notice provision of the contract? That's the case, right? Yes, but it doesn't revolve around the city clerk's determination. Exactly. That's what I think the district court was saying is why I don't care what the city clerk has to say about this. Well, the only issue that the district court was hung up on was not what would happen if the compulsory insurance doctrine applied. The district court understood and believed that an ordinance that required compulsory insurance and was in the public interest purpose, it was within the purpose of the public protection, that would be enforceable. And the court says there is part of this ordinance that would meet that. As you know, there's two sections. There's the sidewalk and then there's the signs. And if that is so, then it applies to cut off the defenses. The whole purpose of the compulsory insurance doctrine is to say we're not, as a matter of public policy, going to allow failures by the insurer. Here's my difficulty, okay? And if you can answer it, that would be great. There's no question the ordinance requires insurance to be obtained by the licensing. There's a question whether the mere fact that insurance is compelled triggers the compulsory insurance doctrine such that the notice provision of the insurance contract that's then purchased is not enforceable. Correct? Correct. So the whole case is, does this ordinance not only compel the licensee to get the insurance, but then also trigger the compulsory insurance doctrine? Right. If this ordinance read like the Financial Stability Act, we'd have our answer because it tells you the answer. If it said it does not trigger the compulsory insurance doctrine, we'd have our answer because it tells you it doesn't. It's silent on the question. Everyone seems to agree that if it said you must get insurance against all claims because we want to protect the public, then the compulsory insurance doctrine would be triggered. But it doesn't say that. If it said you must get the insurance against all claims, but we're only trying to benefit the insured, then I think you would agree the compulsory insurance doctrine would not be triggered, right? If it was only to benefit the insured. Right. That would not be enough. So then the difficulty here is, that's why appellate cases arise, this ordinance doesn't say either thing. It doesn't say specifically it's only to benefit the insured, and it doesn't say specifically it's to benefit the public. So in the face of that silence, what are we supposed to do? Well, I think you look at the context of the act, you look at the same things that the court, the district court focused on, which is you look at the wording. It deals with bodily injury and death. Who can that possibly be in the context of a bar? It's not the LLC, the Panucci's LLC. No, but what I'm saying is that just shows what insurance you must get. In that sense, you're compelled to get insurance. The compulsory insurance doctrine, as I understand it, goes a step further and says in certain instances where you're compelled to get insurance, we will not enforce the notice provisions of the insurance contract. And are you saying that's just any time you're compelled to get insurance, that's the case? If it is for the purpose of a public purpose, that's what the compulsory insurance doctrine is. And how do we know whether it is or isn't? Because any time you're required to get insurance against outside claims, obviously there's some benefit to the outside claimants. You know it because you look at the case law that deals with it in almost virtually every jurisdiction where they examine what the reason is. In this case, you look at it and you say, well, the purpose was to have sidewalk seating that doesn't obstruct problems for pedestrians and the like. It's in the same section of the sidewalk where the sign ordinance, which does say public safety and the district court indicated, that indicates to him that this was for that purpose. I don't think he was reading that to say that the compulsory insurance was for that purpose. He was just reading it to say that the sign ordinance was for that purpose. And so it's possible to discern that they know how to say when something is for a public purpose, yet they didn't say that about the insurance. I think what you seem to be saying, there needs to be some specific discussion in this as to the impact or breadth of the insurance. And I don't think that is required. And you have an Eighth Circuit case that supports your position that you don't need to. But is there anything in New Hampshire law that tells us they're likely to follow that? I was going to ask you that same exact question. Well, I think that in the same way that in the Eighth Circuit, they looked at it in the context of Nevada and Minnesota, and they said in light of the extensive body of law that was there under financial responsibility and other sections, we expect the court would apply it. The New Hampshire court, in numerous cases arising out of the automobile situation, indicated this is because the innocent public injured person cannot possibly enforce or interfere or protect themselves from a failure by the insured to give notice. This is the remarkable case where even Colony argues this insured deliberately did not give notice. Did not do it because it had an ulterior purpose, because it had multiple cancellations, and it had an accident that happened within weeks of the underwriting of this particular incident. Let me ask you this the other way, and this is probably a better question for your opponent, but is there any reason a city would want to require insurance for a licensee, and yet permit the licensee to, and permit the insured to, enforce the notice provision? I'm not sure I understand what you're saying, but the city is going to be concerned in having good administration and having proper indemnity available for its own purpose. Is there any instance in which a city would want to require a licensee to have insurance against claims brought by the members of the public, in which it would not want to prevent the insurer from enforcing its notice provision, which would want the insurer to be able to enforce its notice provision? I think the only way that that would happen is sort of the Mooney case in New Hampshire where the insurance company goes after the insured who acts fraudulently or acts in some way, and they would be recovering from the insured. I don't think there's any situation in light of the comprehensive nature of this act in New Hampshire, in Manchester, and in other cities that they would want the public to have the benefit of the indemnity relationship. They bring in other state, other city ordinance departments that look at it, the police, the fire. They have an examination by the risk manager of the policy. They're terribly concerned in making sure that people like the Jespersons are not left, you know, essentially with a very serious injury and holding the bag without the opportunity to collect this indemnity from the policy that was purchased. The policy was in effect. And that risk is just so present if you allow the insured to basically defeat the insurance by simply not telling the insurer that the claims have been made. Right. Well, I think this is entirely essentially a shifting of that risk onto the carrier, and they collect the premiums for it. They have the opportunity to sell large numbers of policies because they're compelled. This is not a small line of business. And the benefit that the city gets is they're protected if somebody makes a claim against them. So in effect you're saying when you have a situation like this, if you don't want to burden the insurer in this way in your ordinance, you've got to be clear that you're not burdening them. Otherwise we're going to assume that the insurer does have to take the risk of not being able to enforce its notice provision. Yes, and I know my time is up, so let me just respond very briefly as to that. I think the bottom line is that the compulsory insurance protection evaporates and is completely illusory. If a company like Panucci's can play fast and loose here, not give notice, not permit an inspection, and then you have people badly injured and there's no opportunity for them to receive the indemnity that they were entitled to. And that will imperil the activities that the city of Manchester wants to protect across the board in their community. Counsel, let me ask you one final matter. And obviously I'd like to hear also from Appelli. But you talk about this as a policy matter. It's a unique issue. I don't see any specific president from New Hampshire. Isn't this an issue that perhaps could be certified to the New Hampshire Supreme Court? It could be. It never came up that I can recall with Judge LaPlante. I don't believe he ever raised it. He had before him a full understanding on the briefing as to how the city understood it and how the policy operated. On the basis of the New Hampshire cases we've cited, and I realize they're all in the auto context, but there is nothing different about that policy as to autos than there is as to this. Well, the text of the Financial Stability Act is very different. The text is different, but the policy isn't different. Yeah, but the text tells you not to enforce the notice provision of those policies. And this one is silent on that question. I completely understand that. But the bottom line on it is the policy and the purpose of it is identical and this is replicated in state after state in other decisions. I know Judge Howard I think has a couple of questions. Just two questions. Do you have any understanding that the regulatory body in New Hampshire, the insurance department, or in any of the other states for that matter, have weighed in on policies that have all of these outs that should not exist in the compulsory insurance area in particular with respect to this kind of case? I don't. I don't know of anything in New Hampshire on that. I know that counsel has raised for the first time here a preemption argument and I addressed that in our reply brief, but it's not preempted. And as to other states, there may be situations with it, but this is across the board so common. What I would say is there is no case that we're aware of that has taken the position that Judge LaPlante has said, which is I agree with the compulsory insurance, I agree with the purposes, but it needs to have expressed language in the ordinance that says public safety or policy. There's no case. If you shepherdize the Northwest case, the only contrary case to that holding is Jesperson. And I have one other question that goes to the issue you've raised on the appropriate assessment of the burden. Do we have an embedded threshold eerie doctrine question here that we need to be concerned about, given that this is in federal court and ordinarily the burden would be on the party bringing the action in federal court? No, I don't believe so, because the federal district court has ruled on that issue repeatedly in New Hampshire cases that are diversity cases and applied. I'm not aware of any case that hasn't applied 49122A and said that the burden is always on the. But we do have case law that says when you bring an action in federal court on a state law claim and you're asking for, now you'll contest this characterization of it, a novel interpretation of state law, there's sort of an extra burden on the plaintiff in that instance, since you're asking a federal court to do state court work. And effectively, if it's really novel, it's hard to guess, we would just certify. So we sometimes say, you know, you've got to sort of show us that there's more of a basis than would normally be the case if you're asking us to steer in sort of uncertain waters in state law. Well, as I said, I do contest the suggestion this is a novel basis of state law. I understand that in the Financial Responsibility Act there is the sentence about absolute insurance. Let me say you say it's settled state law because the federal district court in New Hampshire has ruled on it consistently. There's no cases from this court of appeals on the issue. There's no case on the court of appeals as to the New Hampshire statute or the New Hampshire ordinance? No. So for us, the court of appeals sitting in diversity, it's an issue of first impression also. And we're not bound by the district courts. All right. But what I'm saying is I would think that the basis would be to look at the New Hampshire jurisprudence on that and typically lays this out as the general rule for compulsory insurance regulation and financial responsibilities. It covers both of it. The cases are legion all over the country and I don't think that anybody was thinking this was a novel or a radical policy. It's an essential policy for municipal and governmental entities. Thank you. Thank you, counsel, at this time. Good morning and may it please the court, William Besch for Colony Insurance Company. I'd like to begin where the questions left off and to start with what the Manchester ordinance that we're talking about does say and then what Jespersen's counsel wants this court to judicially add to the ordinance to assume that it intended to say even though the passers of the ordinance didn't say so in the text. What the ordinance does say is if you are a merchant in a certain part of downtown Manchester, and it's only in certain parts of downtown, and you want to be able to use the sidewalk either for clothing racks or signs or tables or whatever, because that is public property, you must get insurance for claims arising out of that part of your business operation. And it's specific to that part of your operation. And the insurance has to cover the city as well as the business. I think the city is not saying that they care about what in this ordinance. We're not saying we care about what insurance you have for what goes on inside the restaurant. Forget that point because that's a different point. That's the interconnectedness. With respect to the claims by the public that they are concerned with, you must get insurance that will enable you to pay out claims brought by members of the public who are hurt in that part of the business. Correct? Correct. Okay. Is there some reason Manchester would want that to happen and yet want to allow the insured to defeat the insurance by not telling them about the claim? The answer is yes. What's the reason? The reason is to make insurance commercially available. You're not going to be able to buy, except in the auto realm where it's known in the market that it has to comply with this statute. And by the way, even the statute, the financial responsibility statute for auto insurance, would not have allowed this case to happen because in that case, you can't get a default judgment if you're a plaintiff without giving the insurance company notice. So the Jestersons would have been out of luck under even the absolute liability. The concern is if we adopted your view. Of the ordinance, basically no one is going to insure any of these businesses that the government wants to have. And what's the advantage from the government, I understand the concept, what's the advantage for the government of having the insurance required if it can be defeated in this way? So I understand why you're saying you wouldn't want to allow it to be. Because a rational insured never does what the Panucci's restaurant, they gave up the benefit, first of all they tried their best not to pay for it, but then having gotten it, they gave up the benefit that they would have had, which is a defense lawyer to appear in court for them. So this is very, very unlikely to ever happen. It's totally contrary to the... So then why would it be so unlikely that an insurer would be willing to jump into the market if that was the provision? Because it's true that people fail to give notice of accidents, for example, and too much time passes. And that's why you have notice requirements. But you're not saying that it would be irrational for the state to pass an analog statute to the Financial Responsibility Act that would provide exactly what the plaintiffs say the law currently provides, are you? No, it's quite possible that a rational legislature for any number of things where they think could create a particular concern that individual business owners, for example, won't have enough assets themselves. So why couldn't the city of Manchester do the same thing? Well, first of all, the question whether they could do it on the local level as opposed to the state, but they'd have to do it in a way that the market, the insurance company, knows that's what is... But that's just a question of how we guess what the default assumptions are of parties in this market. How do I know that the default assumption would be that Manchester would like the insurer to be able to defeat the insurance by enforcing the notice provision rather than Manchester wanted to make sure its people would be able to get insurance, even if the insured was late in telling the insurer? Well, one way we know is that the writers of the Manchester Ordinance did specify one thing, although that did not... In a totally different context, though. That was in the context of a purpose for a signed ordinance. No, no, no. Oh, I'm sorry. The ordinance specifies that the policy that the business goes and gets is supposed to be not cancelable unless the city is given advance notice that the policy is going to get canceled so that the city can intervene and say, we're going to take your license away unless you pay your premium. That did not happen here because nobody told Colony that this was the reason the policy was being obtained and that this was a requirement. The agent didn't ask for that as part of the policy. In other words, the point is the drafters of the Manchester statute did attempt to make some restrictions on what the policy could say, on the cancellation of the policy, and that's in effect a way of avoiding... That's quite a different situation about whether you're expected to pay something out even in the absence of notice. That's a question of whether... That is just a totally different issue, isn't it, cancellation? No, I'm saying it's another way in which through negligence or otherwise an insured, a business could screw up the insurance that the city wants the business to have by just not paying the premium. The ordinance takes care of that problem by saying, we want you, the business, to make sure your policy... The city was supposed to check to make sure this happened, that this didn't happen in this case. We want to make sure you can't screw it up by getting your policy canceled because we want you to get a policy that says it can't be canceled. I guess I'm just still stuck on, okay, so that's fine. They want to make sure that there's a policy in place. Having gone to the trouble of making sure there's a policy in place, why would the city want to leave it to the insured to defeat the policy by not notifying? Well, again, for the reasons that, first of all, they would assume an insured would never want to do that, would never... All the incentives would be to take advantage of the insurance. Which might make you think it's just assumed that obviously they can't enforce the notice thing, and no big deal because no one's ever going to want to... But these notice provisions exist in every insurance policy. And even in auto policies, except that the statute specifically tells insurers... Let me just answer this way. Suppose the statutes, the ordinance here said, not what the Financial Stability Act says, which makes it clear it's going to defeat the notice provision, but it said, and this insurance is required for the benefit of the public. Would that suffice? Not by itself. Not just saying that. And there is a lot of case law saying to the contrary on that point, correct? No, there is not. The important thing about the case law is, first of all, you have to set aside the cases that are just talking about statutes like the financial responsibility statute. So you have to limit yourself to cases where it's truly a court interpretation of an ordinance like this. And I suggest that there aren't more than a handful cited in the brief. From going back to the 50s. In those cases, though, it's enough to say it's for the benefit of the protection of the public to trigger the doctrine, correct? It's for the benefit of the protection of the recovery by the public. And the insurance company knows it's in contemplation of that statute that they're buying the policy. So they can price it correctly. Yes, Colony had no idea that the reason for purchasing this policy was to comply with the ordinance. There's no way to know that. That's critical. That's a critical point. No one disclosed to Colony, we need a policy that enables us to comply. In fact, that's why the cancellation provision isn't in the policy. Because nobody said we need a policy that complies with this. That seems like a separate ground for defense from the question of whether if you did know about the ordinance, this ordinance would have notified you that you were not going to be able to enforce your notice provisions. I'm saying that the compulsory insurance doctrine, in order to apply, requires two things. One, in order to be able to imply into an ordinance like this. It has to be clear that the purpose is to protect recovery by injured members of the public. And that has to be, the policy, the insurance policy issue, has to be negotiated in contemplation of that. That second question is not the issue the district court ruled on. The district court ruled on that first question. Maybe there's a separate ground. The district court hasn't ruled on that alternative basis, has it? We certainly can, but we often don't do things that the district court hasn't done first. We could just remand and have the district court figure out that question. It's a legal question, but sometimes we like having other judges weigh in first so that we don't have to be the first ones to do it. So just on the point about whether it protects the public, I think implicit in what you're saying is there are cases saying that so long as the ordinance says it protects the public, that triggers the aspect of the compulsory insurance doctrine that prevents the notice provision from being enforced. I guess the one thing I would push back on is protects the public to me is a little bit too loose. I think it has to be more specific. You have to be able to infer from the ordinance that the legislative body had a particular concern that there's a risk created in this area where we need to make sure there is financial responsibility to pay for claims. It's not just we want the public to be protected. It's got to be inferrable from the legislature. When they're compelling the purchase of the insurance and saying they're doing it to protect the public, and the insurance has to be against all claims the public might bring for certain activities, is that not enough to infer it? Again, to protect the public I think is too general, I would say. It has to be more specific than that. Let me ask you two related questions. In the amicus brief, the city of Manchester suggests that we remand the case and that the matter be reopened to allow the colony to defend itself. What's your view on that? I think the amicus brief misses the point on exactly what we're talking about here. The question is not whether the city of Manchester cares about people not getting in accidents and having insurance available in general if they make claims. Perhaps they do. The question is whether this ordinance for this particular sector of businesses creates a different rule from the insurance rules for the rest of the city of Manchester. With that said, isn't this an issue that should perhaps be certified to the New Hampshire Supreme Court? No, because I think it certainly could. It's certainly not an issue, I think as your Honor said earlier, where an appeals court should be writing on a clean slate about what New Hampshire law would be necessarily without consulting with the highest court. I don't think that's necessary because I don't think there's enough in the Manchester ordinance to warrant that inference to get us there. Counsel, on the burden question, do you have a view on whether there is an embedded threshold question here on the Erie Doctrine? And if you do, does it matter whether this is framed as a declaratory action or whether it's something else? I don't think, as I think was suggested at the beginning of the argument, I don't think the burden of proof matters. My second would be I don't think this should be considered a declaratory judgment action because they were seeking money, not just a declaration. So that would allow you not to answer the Erie question that I'm asking. All right, so let's say it's a declaratory action. I must say I am uncertain about the status of that burden shifting action. From the New Hampshire statute, we're not talking about a federal declaratory judgment, so I'm not sure of the answer to that. I hope you don't have to get there. Thank you. Thank you. I'm Bruce Felmley on behalf of the plaintiffs. I just want to very quickly address several things that came up in that argument. First, with respect to what Colony knew, and I know you know from the record, Colony business model was to have a managing general agent called Topco that is the entity that did the underwriting, did the binding, did the quotes, and did the investigation with respect to this. Topco plainly knew about the statute. We've repeatedly cited the documents in the appendix, but I'll just cite one of them. Appendix page 217 is a Topco insured questionnaire. What is the relationship of the additional insured to the named insured? The city requires anyone with sidewalk seating or sidewalk signs to be an additional insured. There are two or three other Topco documents. Topco knew this was absolutely required. They weren't going to be able to get their sidewalk license unless they had the insurance. They knew it was a requirement, and I believe that that would cause them to certainly know. If I can just have one other comment here. The difference in the analysis between the signs and the sidewalk, these are sections of this ordinance that are within several inches of proximity, the same ordinance, section B and E. The district court relied extensively on the fact that one of those would comply with compulsory insurance. They have to be read together. It's the same ordinance, it's the same sidewalk, it's the same facility. The tables are here, the signs are right there. If somebody trips over a sign and gets injured, they have coverage. If somebody has a table they're sitting at and it collapses, they don't have coverage. That's an absurd analysis and examination of the way the statute should be read. This was in your brief, thanks.